UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FEDERAL INSURANCE COMPANY,

    *Plaintiff*,

*v*.

PENNY FAIRBOTHAM,

    *Defendant*.

                                       /

CASE NO. 16-11390

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT (Doc. 10)

### I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Federal Insurance Company's motion for summary judgment (Doc. 10) be **DENIED**.

### II. REPORT

#### A. Introduction and Procedural History

Plaintiff Federal Insurance Company filed a complaint against Defendant Penny Fairbotham in this Court on April 18, 2016. (Doc. 1). On May 16, 2016, District Judge Thomas Ludington referred all pretrial matters to the undersigned magistrate judge. (Doc. 4). Plaintiff alleges it is a corporation incorporated in Indiana and whose primary place of business is New Jersey, that Fairbotham is a citizen of Michigan, and that the amount in

controversy in this case well exceeds the jurisdictional minimum, and therefore this case is properly before this Court on the basis of diversity jurisdiction. (Doc. 1 at 1-2).

Plaintiff alleges that Fairbotham "pled no contest to embezzling $179,690.00" from a business which Plaintiff insured, Jim Wernig, Inc. ("JWI"), and that Plaintiff paid insurance benefits in the amount of $174,690.00 to JWI, *i.e.* the amount embezzled less a $5,000.00 deductible. (Doc. 1 at 2). Plaintiff further alleges that it is the subrogee of JWI[1], and that Plaintiff is thereby permitted to seek reimbursement of the embezzled funds. (*Id*. at 2-3). Plaintiff therefore asserts that it is entitled to recovery of treble the amount embezzled pursuant to Michigan's conversion statute, MCL § 600.2919. (*Id*. at 3).

Fairbotham is proceeding *pro se* in this matter. On May 13, 2016, Fairbotham filed an answer in which she asserted that she "did not plead [sic] no contest to embezzling $179,690.00 from [JWI]," but rather than she "plead [sic] no contest to a misdemeanor of embezzling $200.00 not more than a [sic] $1000.00." (Doc. 3 at 1-2). Fairbotham further confirms that she is "paying fines, court cost [sic] and restitution in the amount of $5860.00 as ordered by the 87-A District Court." (*Id*. at 2).

On November 1, 2016, Plaintiff filed the instant motion for summary judgment. (Doc. 10). Plaintiff therein argues that Fairbotham's no contest plea regarding the charge

---

[1] While Plaintiff characterizes itself as a subrogee of JWI in its complaint (Doc. 1 at 2), Plaintiff switches to calling itself the "assignee" of JWI in its motion for summary judgment (Doc. 10 at 6). Whether Plaintiff's status as either a subrogee or assignee affects its ability to seek relief from Fairbotham as if it were JWI is not discussed by either party. Michigan law provides that the "assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Cannon Twp. v. Rockford Pub. Sch.*, 311 Mich.

of embezzlement from JWI establishes that Fairbotham is civilly liable[2] to Plaintiff for the amount embezzled, *i.e.* $179,690.00, because "[t]here can be no dispute Defendant stole or embezzled from [JWI] and converted that property to her own use." (Doc. 10 at 13).

On November 18, 2016, Fairbotham filed a response in which she reasserted that she did "not plead no contest to embezzlement of $180,000." (Doc. 11 at 1). Instead, she asserts as follows:

> On July 15, 2015 the Judge threw out the case due to Prosecuting Attorney not getting my attorney the evidence in a timely manner. Prosecuting Attorney then went and filed the charges all over again.
> On the hearing on September 9, 2015 I plead [sic] no contest to $200.0/under $1000.00 with all other charges dropped.
> I paid all my fines and court cost [sic] along with the restitution ordered by the court and completed my probation.
> I believe there is no merit in this and ask the judge to dismiss this.

(Doc. 11 at 1-2).

On December 7, 2016, Plaintiff filed a reply. (Doc. 13). Plaintiff asserts that Fairbotham has failed to marshal any evidence or proofs in opposition to its motion for summary judgment, and argues that Fairbotham's conclusory assertions are insufficient to prevent entry of summary judgment. (*Id.* at 1-3). Plaintiff reasons that its proofs, particularly the affidavit of Eugene Skirba regarding the manner in which Fairbotham's embezzlement was discovered, the forensic audit, and the court records demonstrating

---

App. 403, 412 (2015).

[2] Plaintiff suggests in its motion for summary judgment that it can recover from Fairbotham because she "embezzled" monies from JWI. (Doc. 10 at 6). Per MCL 750.174, embezzlement is a criminal charge, not a tort. Fairbotham's alleged conduct could conceivably sound in either the torts of fraud or conversion. Plaintiff repeatedly refers to conversion, and thus appears to proceed under that theory. (Doc. 10 at 1-2, 4,

3

that "Defendant pled no contest to embezzlement," remain undisputed, and merit entry of summary judgment. (*Id*. at 3-4).

### B. Summary Judgment Standard

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material

---

10, 12-13; Doc. 13 at 3-4).

facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. American Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the nonmoving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Analysis

#### i. Issue Preclusion Standard

While Plaintiff moves for summary judgment on the basis of Fairbotham's criminal conviction, conspicuously absent from Plaintiff's briefs is any discussion of the legal mechanism by which criminal convictions can serve as evidence of civil liability. Plaintiff cites MCL § 600.2919a, governing recovery of damages resulting from conversion, and MCL § 750.174[3], which relates to the crime of embezzlement, but offers no explanation as to how Fairbotham's criminal conviction supports a finding of civil liability as alleged in the complaint. Plaintiff is represented by competent counsel, and is not entitled to simply put forth disorganized evidence in the hope that the Court will cobble together a legal argument on its behalf. Despite this deficiency, the Court will resolve Plaintiff's motion for summary judgment on the merits without ordering further briefing for the sake of expediency.

The doctrine of collateral estoppel, *i.e.* issue preclusion, provides that "[a] finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, issue preclusion applies when

---

[3] Plaintiff repeatedly mis-cites this section as "MCL 170.174," a chapter which does not exist. (Doc. 10 at 5, 10-13). Read in context, it appears clear that Plaintiff intended to reference MCL § 750.174, which

6

> 1) there is identity of parties across the proceedings,
> 2) there was a valid, final judgment in the first proceeding,
> 3) the same issue was actually litigated and necessarily determined in the first proceeding, and
> 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630–31 (1990)).

Where a prior criminal conviction applies to a subsequent civil action via issue preclusion, the prior criminal judgment can be used to "establish prima facie all matters of fact and law necessarily decided by that judgment." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951). However, since "all of the acts charged need not be proved for conviction," "the trial judge hearing the [civil] suit" must determine "what was decided by the criminal judgment . . . upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." *Id*. Once the matters of law and fact necessary to the criminal judgment have been discerned, the defendant may "offer rebuttal evidence to break down the force and effect of that prima facie evidence." *New Jersey Wood Finishing Co. v. Minnesota Min. & Mfg. Co.*, 332 F.2d 346, 358 (3d Cir. 1964), aff'd, 381 U.S. 311 (1965).

### ii. Application of Issue Preclusion

Plaintiff has provided court records from the Otsego County Circuit Court, which demonstrate that Fairbotham was prosecuted for embezzlement in 2015. (Doc. 10 Ex. 6).

---

governs embezzlement.

Those records show that Fairbotham pled "NC," *i.e. nolo contendere* to the charge of "EMBEZZLE – AGENT/TRUSTEE 0/$200 U/$1000" on September 9, 2015. (*Id.*). Fairbotham's plea of *nolo contendere* thwarts Plaintiff's issue preclusion argument. As noted above, the Court is obliged to apply the same preclusive effect as "would be given that judgment under the law of the State in which the judgment was rendered." *Migra*, 465 U.S. at 81. As this Court has repeatedly recognized, Michigan law clearly provides that a

> nolo contendere plea cannot be considered "actual litigation," at least not in terms of collateral estoppel jurisprudence. The essence of a nolo contendere plea is in its name, "nolo contendere," or "I will not contest it." If the charges are uncontested, they are necessarily unlitigated. Neither can we say that the procedures followed by the judge in establishing a factual basis for taking a nolo contendere plea constitute "actual litigation."

*Lichon v. American Univ. Ins. Co.*, 435 Mich. 408, 429-30 (1990); *see also Gorney v. Charter Twp. of Brownstown*, No. 14-12731, 2016 WL 4537828, at *6 (E.D. Mich. Aug. 31, 2016); *White v. City of Southfield*, No. 14-CV-10557, 2015 WL 5545472, at *4 (E.D. Mich. Sept. 18, 2015); *Shirley v. City of Eastpointe*, No. 11-14297, 2013 WL 4666890, at *8 (E.D. Mich., Aug. 30, 2013); *Karttunen v. Clark*, No. 06-13388, 2007 WL 2902872, at *2 (E.D. Mich. Oct. 2, 2007). The question of Fairbotham's liability for embezzlement was therefore not decided on the merits in Fairbotham's 2015 state court criminal proceedings. The third and fourth factors identified in *Darrah* are therefore not present here, and issue preclusion does not apply. Moreover, the state court records do not even establish the identity of the victim, noting only that "VICTIM 1" was awarded $5,000.00, thus the first factor necessary for issue preclusion is also absent. (Doc. 10 Ex. 6).

### iii.     Plaintiff's Motion for Summary Judgment Should be Denied

Plaintiff asks that the Court make several logical leaps, none of which are permissible. First, Plaintiff has not established that there is no question of material fact as to whether Fairbotham perpetrated the alleged conversion of funds from JWI. The 2015 state court criminal proceedings do not establish for issue preclusion purposes that Fairbotham embezzled from JWI, or indeed anyone. Plaintiff's provision of Fairbotham's case history from the Gaylord Police Department, her payment schedule as ordered by the state court, emails from the Otsego County Prosecutor, and a newspaper article noting that Fairbotham was arrested on charges of embezzlement likewise fail to demonstrate that she embezzled from JWI. (Doc. 10 Exs. 5, 6, 7, 8).

Plaintiff has failed to carry its burden in demonstrating that Fairbotham was the tortfeasor responsible for the damages incurred by JWI, the amount of those damages, and that Plaintiff is entitled to reclaim the damages incurred by JWI. Plaintiff provides an assignment contract which purports to "assign and transfer all of [JWI's] rights against Penny J. Fairbotham" (Doc. 10 Ex. 3), but fails make any legal argument regarding the operation of Michigan subrogation or assignment law, and thus has not explained why it is entitled to claim any damages from Fairbotham.

Furthermore, it is not at all clear that Plaintiff's provision of a forensic investigation conducted by RGL Forensics demonstrates that Fairbotham was in fact the party who embezzled funds from JWI. That report states "[w]e understand that in July 2013, the insured discovered that its former employee, Penny Fairbotham . . .

misappropriated cash." (Doc. 10 Ex. 1). Insofar as the RGL Forensics report merely regurgitates the assertion, perhaps provided by Plaintiff or JWI, that Fairbotham was the employee who embezzled from JWI, it provides no proof whatsoever that Fairbotham was in fact the embezzler. Moreover, Plaintiff has offered no argument connecting the dots between this report, Michigan law, and its desired relief. Plaintiff's lack of effort in demonstrating its case legally or factually falls well below the standard of proof necessary for entry of summary judgment.

Next, Plaintiff's provision of a report from Delve Information Resources, Inc. does nothing more than identify particular assets, affiliations, and criminal cases relating to Fairbotham, and therefore does not establish that she was the party who embezzled from JWI, much less that she is liable for the full extent of the $179,690.00 allegedly embezzled.

Plaintiff also provides an affidavit from Eugene Skiba, the owner of JWI. (Doc. 10 at *Affidavit of Eugene Skiba*). Mr. Skiba avers, in relevant part, that he "first became aware of the possibility that Defendant, Penny Fairbotham was embezzling funds . . . in 2007," that he "confronted Defendant, who stated that she would write a check for the missing funds" but failed to do so, that he "discovered that there was $183,273.32 missing since January 2008," and that "Defendant was the only person who had access and could have embezzled the funds." (*Id.* at ¶¶3, 8-9). Skiba's assertion that funds were missing and that Fairbotham was the only person with access to those funds provides some evidence that Fairbotham embezzled from JWI. However, Plaintiff wholly fails to

10

craft a legal argument for relief premised on this evidence, and instead relies upon the Court to proffer an argument on its behalf. Plaintiff's assertion that "[t]here can be no dispute that Defendant stole or embezzled from [JWI] and converted that property her own use" (Doc. 10 at 13) is insufficient reason to grant summary judgment in its favor.

Furthermore, even if the Court was to assume (in the absence of a legal argument by Plaintiff) that Fairbotham perpetrated the alleged embezzlement from JWI, it would not answer the question of how much money was embezzled. Plaintiff argues that it is entitled to $179,690.00, and provides the report from RGL Forensics in support of this figure. (Doc. 10 Ex. 1). Yet the RGL Forensics report explicitly states that its calculation is based on review of just two months per year, March and June, for each year between 2008 and 2013, excluding 2011 which was analyzed between February and September; RGL Forensics then "extrapolated" this data "over the entire claimed amount of time," and came up with the figure $179,690. (*Id.*). This figure thus represents only an estimate of the damage suffered by JWI. This estimate may be good enough for insurance purposes, but Plaintiff has not made any argument as to whether and why it is sufficient for the purpose of extracting a legal judgment out of Fairbotham. Furthermore, Skiba's affidavit tends to show that the amount embezzled was $183,273.32. (*Id.* at *Affidavit of Eugene Skiba*). This inconsistency between the purported amount of damages shows that there remains a question of material fact regarding the amount of damage actually incurred by JWI.

11

Plaintiff must bear its own burden in establishing that no issue of material fact exists as to whether Defendant embezzled the amount alleged and that Plaintiff is entitled to recoup any money embezzled from JWI based on an expressly stated plausible legal theory. Plaintiff has not done so; therefore, Plaintiff's motion for summary judgment (Doc. 10) should be denied.

### E. Conclusion

For the reasons stated above, the Court recommends that Plaintiff's motion for summary judgment (Doc. 10) be **DENIED**.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 17, 2017                           S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Penny Fairbotham at 349 Red Tailed Hawk Loop, Grayling, MI 49738.

Date: March 17, 2017                            By s/Kristen Castaneda
                                                Case Manager

13